**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1281
_____

ISAIAS GABRIEL ZAMBRANO-RIOS,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A216-027-379)
Immigration Judge:  Honorable D'Anna H. Freeman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 20, 2020
Before:  SHWARTZ, RESTREPO and GREENBERG, Circuit Judges

(Opinion filed:  July 23, 2020)
_____

OPINION*
_____

PER CURIAM

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Isaias Zambrano-Rios, a native and citizen of Ecuador, entered the United States in March 2019. He was subject to a reinstated removal order as he was previously removed from the United States in February 2018. AR 293. Pursuant to 8 C.F.R. § 208.31, Zambrano-Rios applied for withholding of removal grounded on religious persecution and protection under the Convention Against Torture ("CAT").

In his testimony before the IJ, Zambrano-Rios alleged three incidents of persecution based on his Evangelical Christian beliefs. First, in February 2018, members of the local community (who are Catholic) pushed and kicked him and dislocated his arm during a gathering at a church that he had built on his property. AR 84. The police came after the incident and instructed him to file a report. Zambrano-Rios needed witnesses, but none were willing to testify because they were afraid. AR 86. Next, in August 2018, a member of the community threw a bottle at Zambrano-Rios while he was preparing for a service, resulting in a laceration that required 12 stitches. AR 89. The police again arrived and sought witnesses, but members of the congregation were afraid to testify. AR 90. Finally, in January 2019, a local group destroyed the church and beat him, and, at some point, someone threatened to kill him. AR 91, 93. He suffered only some scratches. AR 111. The police told Zambrano-Rios he should hire an attorney to recover the damages "because they couldn't do anything." AR 92.

The IJ denied Zambrano-Rios's application for withholding of removal. She gave limited weight to his testimony, finding that much of it was not supported by the Country

2

Conditions reports and that no medical documentation was submitted to prove his injuries. AR 44. The IJ held that the three incidents did not rise to the level of persecution and that Zambrano-Rios had not met his burden to show that it was more likely than not that he would be persecuted in Ecuador in the future. She also concluded that the police were not unwilling to protect him; rather, they could not assist him at the time because no one was willing to provide a statement or testify. AR 45-46. Regarding the CAT, the IJ determined that Zambrano-Rios failed to establish that it is more likely than not that he would be tortured if removed to Ecuador or that the Ecuadorian government would commit or acquiesce to such torture. AR 46. The BIA agreed with the IJ and dismissed the appeal. This petition for review followed.

We have jurisdiction to review final orders of removal. See 8 U.S.C. § 1252(a)(1). "When the BIA issues a separate opinion," as it did here, "we review the BIA's disposition and look to the IJ's ruling only insofar as the BIA defers to it." Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010). We review the agency's findings of fact for substantial evidence, considering whether it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Balasubramanrim v. INS, 143 F.3d 157, 161 (3d Cir. 1998). The decision must be affirmed "unless the evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003) (citation omitted).

3

For withholding of removal, Zambrano-Rios must establish that his "life or freedom would be threatened" in Ecuador because of his race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. § 1231(b)(3). To meet this standard, he must show either (1) that he suffered past persecution in Ecuador, which gives rise to a rebuttable presumption of future persecution; or (2) that there is a clear probability that his life or freedom would be threatened upon return Ecuador on account of one of the protected grounds. See Garcia v. Att'y Gen., 665 F.3d 496, 505 (3d Cir. 2011). If the alleged persecution was not conducted directly by the government, the petitioner has the burden to prove that it was conducted "by forces the government is either unable or unwilling to control." Id. (citation omitted).

Here, despite Zambrano-Rios's arguments to the contrary, substantial evidence supports the BIA's conclusion that the three incidents described by Zambrano-Rios do not rise to the level of persecution. See AR 3-4. "[P]ersecution connotes extreme behavior, including 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.'" Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) (quoting Fatin v. I.N.S., 12 F.3d 1233, 1240 (3d Cir. 1993)). Persecution does not include "all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional," id., nor do "isolated incidents that do not result in serious injury... rise to the level of persecution." Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005).

4

While the three incidents described by Zambrano-Rios were certainly unjust, a period of about six months elapsed between each incident, during which Zambrano-Rios faced no physical assault.  See AR 108.  And though Zambrano-Rios stated that a member of the community threatened his life at one point, he has not established a "clear probability" that his life was ever in danger or that his life would be in danger if he returned.  See Fatin, 12 F.3d at 1238; Herrera-Reyes v. Att'y Gen., 952 F.3d 101, 108 (3d Cir. 2020) ("[O]ur interest is… [in] the likelihood of the harm threatened.").  There is no evidence that his wife, who is Evangelical Christian and still lives on the same property where these incidents occurred, see AR 113, is facing any danger.  See Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005) (holding that the reasonableness of a petitioner's well-founded fear of future persecution is diminished when family members remain in the petitioner's native country without meeting harm).  The United States Department of State's 2018 Religious Freedom Report for Ecuador, AR 120-28, does not reflect any animosity between Catholics and Evangelical Christians.[1]

---

[1] Zambrano-Rios argues in his brief that the IJ committed reversible error by failing to consider an article in the record which noted that the Evangelical Church denounced as "persecution" a governmental decree that affected various churches' non-profit legal status.  See AR 169.  However, the IJ and BIA were not required to parse through every piece of evidence presented during the hearings.  See Huang, 620 F.3d at 388.  In any event, the Evangelical Church's disagreement with the Ecuadorian government concerning non-profit status does not lend any significant support to Zambrano-Rios's persecution claim.

5

In addition, the three incidents described by Zambrano-Rios were not perpetrated by forces that the government was unable or unwilling to control. Zambrano-Rios testified that the police arrived and appeared willing to help after at least two of the incidents, but that the culprits had fled the scene and none of the church congregants would provide a statement regarding the incidents. See AR 85-86, 89-92. He was also advised by the police to seek civil damages against the members of the community for the damage to the church. AR 92. Under the circumstances, substantial evidence supports the BIA's holding that Zambrano-Rios failed to demonstrate that the government is unable or unwilling to protect him from the individuals harboring religious animus toward him.

The BIA also correctly concluded that Zambrano-Rios was ineligible for relief under the CAT. To be eligible for CAT relief, Zambrano-Rios had to establish that he was or would likely be subject to torture and that government officials acquiesced or would acquiesce in the torture. See Myrie v. Att'y Gen., 855 F.3d 509, 516-17 (3d Cir. 2017). Based on the evidence previously discussed, Zambrano-Rios did not establish either that he was subject to torture or that government officials had acquiesced. Moreover, substantial evidence supports the BIA's assertion that Zambrano-Rios could safely relocate to a different part of Ecuador as he had previously lived with his parents and attended a different church without facing any physical assault.

Accordingly, we will deny his petition for review.